## ROYAL v. SMITH.

1. **Contract:** PROMISE TO MARRY: EVIDENCE. In an action for damages for a breach of promise to marry, where the issue was the making of the promise, matter relating to the subsequent conduct of the plaintiff before the breach is not competent.

2. ———: ———: EXPRESS PROMISE. In such a case an express promise need not be proved; the contract may be inferred from the conduct of the parties.

3. ———: INSTRUCTION. An instruction concluded with these words: "You are to determine from this evidence if it be true that the parties entered into a marriage contract:" *Held*, to mean that the jury were to determine from all the evidence whether or not the parties had entered into the contract.

4. ———: DAMAGES. In estimating the damages for the breach of a marriage contract, the pecuniary advantages of its performance, as well as the pain and mortification occasioned plaintiff by the breach, are to be considered.

5. **Verdict:** SUFFICIENCY OF EVIDENCE: DAMAGES. In the absence of a presumption that the verdict is the result of passion or prejudice, it will not be disturbed because the evidence is conflicting or the damages claimed to be excessive.

*Appeal from Pottawattamie District Court.*

WEDNESDAY, JUNE 16.

THIS is an action for an alleged breach of promise of marriage. The answer denies the allegations of the petition. There was a jury trial, and a verdict and judgment for plaintiff for $2,750.00. The defendant appeals.

*Sapp & Lyman,* for appellant.

*Dailey & Keatley,* for appellee.

DAY, J.—I. The plaintiff resided in defendant's family from the 9th day of October, 1865, until September, 1872.

1. CONTRACT: promise to marry: evidence.

Until the spring of 1871, she received her board and clothes, after which she was paid $2.00 a week. Plaintiff is about twenty-two years of age, and the defendant fifty-five. On the 4th of October,

1870, the defendant's wife sailed with her son for England, in the ship Cambria. The vessel was wrecked, and defendant's wife was reported among the lost. The defendant started for England on the 10th day of May, 1871. The plaintiff testifies that he paid her attention between the time of the reported death of his wife and his departure for England; and that on the 8th of May he made her a formal proposal of marriage, which she accepted on the 9th, the day before his departure. Defendant was absent about sixteen weeks. During his absence plaintiff remained with his family, and was paid wages as before. Before the commencement of this action the defendant married Mrs. Sarah A. Mullen.

Upon her cross-examination plaintiff testified: " I know a young man by the name of Crump; the only time that I saw him was at a neighbor's house; he was working at Mr. Hughes'. Emma Smith and I went there four or five times during Mr. Smith's absence; Mr. Crump never accompanied me home from there; I never kept company with him, and Hiram Smith never objected to it; he was on good terms with Mr. Crump."

Hiram Smith is defendant's son. The defendant introduced Hiram Smith, who testified, amongst other things, as follows: " I was left in charge of the house and everything. I had authority to pay the hired girl, Miss Royal, wages when she wanted it. * * * * * * * * Miss Royal lived at our house then; for four or five weeks after father left, she staid at home; but after that I had to get up and let her in, between eleven and twelve o'clock at night. A young man of the name of Crump accompanied her."

The defendant then asked this witness the following questions: " State whether you informed her of the character of this young man, Crump, and objected to her running around with him? You may go on and state whether you objected to her going with that Mr. Crump, or anybody? State whether you forbade the plaintiff accompanying this Mr. Crump? State what words you had with Miss Royal at that time relative to her accompanying other persons? State what objection, if any, was interposed to her accompanying him? "

These questions were all objected to as immaterial, and the objection was sustained. The defendant assigns this ruling of the court as error. We are clearly of opinion that it is right. The defendant's sole defense is that he never made any promise of marriage. He does not seek to justify his breach of promise by the subsequent improper conduct of plaintiff. As affecting and bearing upon the question of engagement, it was proper to prove. that plaintiff, during the time she claims the engagement existed, received the attention of other young men. Such evidence would be entitled to consideration in determining whether or not an engagement was established by the evidence, and such proof defendant was permitted to introduce.

But it certainly would be going to an unwarranted length, without any issue affecting plaintiff's character, to simply prove that a third person had spoken derogatorily of one whose company she was keeping, and had forbidden her to receive his addresses. It is to be observed that it was not even proposed to prove that Crump was of bad character, but simply to show what Hiram Smith said respecting him. It is claimed, however, that this evidence is admissible to contradict the testimony of plaintiff on cross-examination. But, for this purpose, her attention should have been called to the time, place and circumstances of the supposed contradiction. This was not done.

II. The defendant asked several instructions, which were all refused, and this action is assigned as error. These instructions all seem to be based upon the notion that plaintiff must prove a distinct and express promise of the defendant to marry her, and that, under the issue, a promise cannot be inferred from the conduct of the parties and their actions one toward the other. The instructions were properly refused.

2. ——: ——: express promise.

III. The court, after referring the jury briefly to the respective claims of the parties, and the evidence which they had introduced in support of them, uses this language: "It is the duty of the jury to consider the whole of this evidence, and to determine not only what

3. ——: instruction.

facts are established thereby, but what weight and effect should properly be given to such facts as you find the evidence does establish. You are to determine from this evidence if it be true that the parties entered into a marriage contract."

Appellant interpolates a comma before and after the words *if it be true*, and argues that the court has instructed the jury that, if this evidence be true, they are to find therefrom that the parties entered into a marriage contract. It is clear, however, that the court simply meant to direct the jury they were to find from this evidence whether or not it be true that the parties entered into a marriage contract, and from the whole charge, taken together, we are satisfied that the jury could not otherwise have considered it. In the next instruction the court says: "If you do not find from the evidence that the parties entered into a marriage contract, you will have no other duty to perform, with reference to the case, except to return your verdict for the defendant. But if you find from the evidence that the parties entered into said marriage contract, and you find the further fact that defendant has made a breach of said contract, your only other duty is to assess damages." This clearly refers the whole evidence to the jury, and authorizes them to consider and weigh it all.

IV. Upon the question of damages, the court instructed as follows: "In making this assessment, you are to consider 4. _____: the pecuniary advantages which a marriage with damages. the defendant would have been to her. You are also to consider the personal pain and mortification, if any, which she has sustained by reason of her disappointment; and you are to allow her such sum as, in your judgment, will compensate her for her loss and injury."

Appellant claims that the rule is "that the party is to recover for the injury to the feelings and affections; but that this does not include personal pain and mortification for disappointment." We think, however, that in an action for breach of promise of marriage, the distinction *between injury to the feelings and affections*, and *personal pain and mortification for disappointment*, is too shadowy to receive practical recognition.

Appellant further urges that the pecuniary advantages of a marriage are not to be considered in estimating damages, and that if this were so, the damages would largely depend upon whether the defendant was rich or poor. In fact, in such cases, the damages do largely depend upon that question. The law treats marriage as a civil contract. The damage which the law affords for a breach of the contract, should be proportioned to the benefits lost by the breach.

In *Holloway v. Griffith*, 32 Iowa, 409 (416), it is said: "It is proper for the jury to consider the pecuniary, as well as the social, standing of the defendant, as tending to show the condition in life which the plaintiff would have secured by a consummation of the marriage." If the pecuniary standing of the defendant may be considered for the purpose of showing what condition in life the plaintiff would have secured by a consummation of the marriage, it follows that it is proper to consider the effect which the pecuniary standing of defendant would have had on plaintiff's condition, or, in other words, as expressed in the instruction, " the pecuniary advantages which a marriage with defendant would have been to her."

V. It is further claimed that the verdict is not sustained by the evidence, and that the damages are excessive. It 5. VERDICT: rarely happens that a case is presented to sufficiency of a court in which the evidence is more conflicting. evidence: damages. The plaintiff testifies positively to the promise of marriage, and introduces other proof of strong corroborating circumstances. The defendant positively denies not only the promise of marriage, but the existence of the other circumstances testified to by plaintiff's other witnesses. The case is peculiarly one for the determination of a jury, and we cannot say, after a careful examination of all the evidence, that their verdict is not supported even by a preponderance of the evidence. If the evidence was much less satisfactory in support of plaintiff's claim, we would not disturb the verdict as opposed to the testimony. The damages are not so large as to furnish any evidence that they were the result of prejudice or passion. The record discloses no error.

AFFIRMED.