OLSON, Respondent, vs. SOLVESON, Appellant.

*April 21 — May 12, 1888.*

*(1) Practice: Jurors: Full panel: Peremptory challenges. (5, 6) Statements by counsel and by presiding judge during trial: Reversal of judgment. (2) Breach of promise to marry: Evidence: Immaterial error. (3) Mutuality of contract: Court and jury. (4) When formal demand unnecessary. (7) Evidence of defendant's pecuniary circumstances. (8) Damages: Instructions to jury. (9) Excessive damages: Appeal.*

1. An objection to proceeding with a trial on the ground that, two juries being out and one juryman excused, only eleven jurors of the regular panel are left, cannot be sustained. The lack of jurors may be supplied as provided in sec. 2538, R. S.; and the peremptory challenges given by sec. 2851 apply to a full panel of jurors thus called, as well as to the regular panel.

2. In an action for the breach of a promise of marriage, where the defendant concedes the promise and the refusal to marry, an error in admitting improper evidence to prove such promise, even if not cured by striking out such evidence, will not work a reversal.

3. Where the contract to marry is conceded, the question of its mutuality need not be submitted to the jury.

4. An absolute refusal to marry the plaintiff obviates the necessity of a formal demand.

5. The mere fact that the plaintiff's counsel, in opening the case to the jury, stated that judgment had been taken in the action by default at a former term, defendant's counsel having just before stated the same fact, is not ground for reversal.

6. It was not error for the court to announce that it could not wait until a certain jury came in before proceeding with the trial; nor to inquire the object of a certain line of cross-examination, and to state wherein it was immaterial, and to restrict the same; nor to state that it appeared in evidence that defendant was not a poor man, where such was the undisputed fact, and defendant had testified, in his own behalf, that he was probably worth between five and six thousand dollars.

7. In an action for the breach of a promise of marriage, evidence of the defendant's pecuniary circumstances is competent as affecting the question of damages.

8. In an action for the breach of a promise of marriage, the court refused an instruction that, under the complaint, the plaintiff was simply entitled to compensatory damages; but it submitted to the jury the question as to what sum should be given to the plaintiff *by way of compensation* for the injury sustained by the breach of the contract, charging them that they were to get at the damages from the evidence, the situation of the parties, what occurred between them, their condition and surroundings, and then give such sum as in their judgment the evidence would warrant — not an unreasonable or exorbitant sum, but a just, reasonable, and fair sum. *Held*, that the question of damages was fully and fairly presented to the jury.

9. In such a case this court will not interfere on the ground that the damages are excessive, unless it is made apparent that the jury were actuated by undue motives.

APPEAL from the Circuit Court for *Waukesha* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages for an alleged breach of a promise made October 26, 1885, whereby the defendant agreed to marry the plaintiff, and then refused. The answer was a general denial. Upon the trial the jury returned a verdict in favor of the plaintiff, and assessed her

damages at $1,500. From the judgment entered upon such verdict the defendant appeals.

For the appellant there was a brief by *Morris Wittig*, attorney, and *David W. Small*, of counsel, and oral argument by *Mr. Small*.

*Oscar F. Jones*, for the respondent.

CASSODAY, J. The verdict is abundantly sustained by the evidence. In fact, the promise and refusal are both conceded. The several errors assigned will be considered.

1. Two juries were out, and one juryman had been excused at the time the cause was called for trial. This left but eleven names in the box, and the defendant objected to proceeding with the trial for that reason. It was never intended that the business of the court should be suspended merely because the regular panel of jurors should be thus exhausted. On the contrary, the statutes expressly provide that "when, by reason of challenge or otherwise, a sufficient number of jurors, duly drawn and summoned, cannot be obtained for the trial of any cause, civil or criminal, the court shall cause jurors, duly qualified, to be returned from the by-standers, or from the county at large, to complete the panel for such trial, and the court may, in its discretion, order a special *venire* to issue for that purpose, or such jurors may be returned by the sheriff . . . without writ." Sec. 2538, R. S. The lack of jurors was supplied as thus prescribed. The three peremptory challenges to which each party is entitled apply to a full panel of jurors thus called, as well as to the regular panel. Sec. 2851, R. S.; *Gilchrist v. Brande*, 58 Wis. 184. The exceptions thereto must be overruled.

2. The plaintiff testified, in effect, that she was at Mrs. Rockwell's, October 26, 1885; that her sister then lived there; that the defendant was there on that day, and agreed to marry her. She was then cross-examined by the defend-

ant's counsel, and, after being told to get down to the agree ment made with the defendant, she was asked: "Who was there besides you and *Martin? Answer.* No one." Thereupon the sister testified to the effect that the plaintiff and defendant were both there, and then, in answer to the question whether there was anything unusual in the appearance of either, which was objected to, she stated what was said between her and the plaintiff, but the same was immediately stricken out by the court. Assuming that the admission of such conversation was error, not cured by striking out the testimony, which it would be difficult to maintain, yet, as the defendant conceded the engagement and his refusal to marry, it affected no substantial right of the defendant, and hence is no ground for reversal. Sec. 2829, R. S.

3. The mere fact that the plaintiff's counsel, in opening the case to the jury, stated, in effect, that judgment had been taken in the action by default at a former term, when the defendant's counsel had just before stated the same fact, is not ground for reversal. Nor do we find anything in the remarks of counsel characterizing the evidence which should work a reversal.

4. Numerous exceptions are taken to the remarks of the learned judge who presided at the trial. But the right to preside at all necessarily includes, within certain limits, a discretionary right to direct the proceedings. He must necessarily rule upon questions presented; the admission or rejection of testimony; indicate the line of examination or cross-examination to be pursued; and to limit or restrict the same when unnecessarily extended, or when there is any departure. It is impossible to perform such duties without oral communications which may at times characterize the question or testimony, or some part of it. It was certainly not error for the court, in effect, to announce that it could not wait until a certain jury should come in before proceed-

ing with the trial; nor to inquire the object of a certain line of cross-examination, and to state wherein it was immaterial, and to restrict the same; nor in stating that it appeared in evidence that the defendant was not a poor man, since such was the undisputed fact, as appeared from the defendant's letters in evidence. Besides, in the same connection, the defendant was recalled in his own behalf, and testified, in effect, that he had taken an inventory a year prior to the previous January, and that upon that basis he would then be worth between five and six thousand dollars. This estimate was really higher than the evidence would otherwise have authorized. That it was competent, upon the subject of damages, to prove the defendant's pecuniary circumstances, there would seem to be no doubt. *Bennett v. Beam*, 42 Mich. 346, 36 Am. Rep. 442; *Hunter v. Hatfield*, 68 Ind. 416; *Lawrence v. Cooke*, 56 Me. 187; *Reed v. Clark*, 47 Cal. 194; *James v. Biddington*, 6 Car. & P. 589.

5. The defendant having absolutely refused to marry the plaintiff, obviated the necessity of any formal demand.

6. The court was requested to give a certain instruction to the jury to the effect that, under the complaint, the plaintiff was simply entitled to compensatory damages. The court failed to give such instruction in form, or to hear an authority read which is said to be in support of it. But the court did fairly submit to the jury the question as to what sum, from all the evidence, ought to be given to the "plaintiff *by way of compensation* for the injury sustained by the breach of this contract." They were, moreover, told, in effect, that the only essential question for them to determine was the amount of damages they should award to the plaintiff for the breach of the contract; that this question of damages, generally, in actions of this kind, was a difficult and delicate one, upon which the law had failed to furnish any rule by which they could measure the same by dollars and cents, but that they were to get at the damages

Olson vs. Solveson.

from the evidence, the situation of the parties, what occurred between them, their condition and surroundings, and all about it, and then give such sum by way of damages as in their judgment the evidence would warrant; that they were not to give an unreasonable or exorbitant sum, but a just, reasonable, and fair sum,— such as they thought, from a fair consideration of all the evidence and all the surroundings, the plaintiff should have and the defendant ought to pay. Such is the substance of the portions of the charge to which exceptions were taken. The charge nowhere authorized punitive damages. On the contrary, it only authorized compensatory damages. It fully and fairly presented the question of damages, which was really the only question in the case.

7. It is claimed that the damages are excessive. But this court will not interfere in such a case upon that ground merely, unless it is made apparent that the jury have been actuated by undue motives. *Smith v. Woodfine,* 87 Eng. C. L. 660; *Richmond v. Roberts,* 98 Ill. 480; *Royal v. Smith,* 40 Iowa, 615; *Waters v. Bristol,* 26 Conn. 398.

8. The contract of marriage being in effect conceded, there was no error in refusing to submit to the jury the question of its mutuality.

Upon a careful examination of the whole record we find no material error.

*By the Court.*— The judgment of the circuit court is affirmed.